UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUNITA LEEMAN, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>XPO LOGISTICS INC., BRADLEY JACOBS, JOHN HARDIG, SARAH GLICKMAN<br><br>Defendants. | Civil Action No. 18-11741<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>Jury Trial Demanded</u> |

Plaintiff Junita Leeman ("Plaintiff"), by and through her attorneys, alleges upon personal knowledge as to herself, and upon information and belief as to all other matters, based upon the investigation conducted by and through her attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.       This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant XPO Logistics Inc. ("XPO" or the "Company") common stock between August 10, 2015 and December 13, 2018, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      XPO purports to be a global logistics provider. XPO states that it operates in supply chain management; truckload, less-than-truckload and expedited shipping; freight brokerage; last-mile delivery; intermodal freight transport and drayage; and global freight forwarding.

3.      During the Class Period, unbeknownst to investors, XPO was "cooking its books" to make it appear that it was performing better than it was. The Defendants engaged in fraudulent accounting schemes and other improper accounting practices. At the core of Defendants' fraudulent scheme was the method by which the Company accounted for its numerous acquisitions, dubious tax accounting, under-reporting of bad debts, phantom income through unaccountable acquisition earn-out labilities, and aggressive amortization assumptions: all designed to portray glowing "Non-GAAP" results. Meanwhile, throughout the Class Period, Defendants represented that XPO's financial statements complied with GAAP. As a result, XPO repeatedly materially misstated its financial condition and operating results in filings with the SEC and materially mislead Class Members

## JURISDICTION AND VENUE

4.      The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

6.      This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). XPO shares trade in this District, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

8.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the New York Stock Exchange ("NYSE"), a national securities exchange.

## PARTIES

9.      Plaintiff Junita Leeman is an individual residing in Bellevue, Washington. Plaintiff acquired and held shares of the Company at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

10.      Defendant XPO is a Delaware corporation with its principal place of business in Greenwich, Connecticut. The Company trades on the New York Stock Exchange ("NYSE") stock exchange under the ticker symbol "XPO". XPO claims that it is "is a top ten global logistics provider of cutting-edge supply chain solutions to the most successful companies in the world."

11.      Defendant Bradley Jacobs ("Jacobs") has been the Chairman and Chief Executive Officer of XPO since September 2, 2011.

12.      Defendant John Hardig ("Hardig") was the Chief Financial Officer for XPO from February 2012 until August 15, 2018.

13.      Defendant Sarah Glickman ("Glickman") has been the Acting Chief Financial Officer for XPO since August 15, 2018.

14.     Collectively, Jacobs, Hardig, and Glickman, are referred to throughout this complaint as the "Individual Defendants".

15.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

16.     The Class Period begins on August 10, 2015, when XPO booked a mysterious "Acquisition Earn-Out Liability" of $29 million, in its Form 10-Q for the Second Quarter of 2015, without making any disclosure about any earn-out component of the consideration. The genesis for this "Acquisition Earn-Out Liability" appears to be XPO's acquisition of UX Specialized Logistics on February 9, 2015, its acquisition of Bridge Terminal Transport Inc. on May 4, 2015, and its acquisition of Norbert Dentressangle on June 9, 2015. In subsequent quarters, XPO did not recognize any payments through its cash flow statement to satisfy the earn-out, or equity issuance to satisfy the debt. By failing to account for the earn-out, XPO derived $29 million of phantom income.

17.     Subsequently, XPO has continued to "cook its books" to the detriment of Class Members, in order to portray glowing "Non-GAAP" results. The Company and its senior officers engaged in a series of fraudulent accounting schemes in order to meet XPO's earnings forecasts and analyst expectations. As a result of the fraud, XPO materially misstated its financial condition and operating results.

18.     As described more fully below, XPO engaged in various other improper accounting practices, as a result of which the Company also violated the reporting, record-keeping and internal control provisions of the federal securities laws.

**Improper Valuation of Acquired Assets**

19.     Since 2011, XPO deployed approximately $6.1 billion of capital for seventeen acquisitions. These acquisitions generated just $73 million of cumulative adjusted free cash flow, yielding a paltry 1.2% return on capital investment. At least four of these acquisitions took place during the Class Period.

20.     Pursuant to GAAP, XPO was required to recognize the assets acquired and the liabilities assumed from an acquired company based on their fair values at the time of acquisition. Any excess between the cost of an acquired asset and the sum of the fair values of tangible and identifiable intangible assets less liabilities were required to be recognized as goodwill.

21.     XPO's practices in the valuation process were deficient in various ways which led to the understatement of equipment valuations and consequent overstatement of income when the undervalued equipment was resold. With regard to internal valuations, XPO personnel used improper and inconsistent valuations methods. Contrary to GAAP, some of the equipment was valued so as to realize a predetermined gross margin when it was sold.

22.     As a result of these practices, XPO used improper and inconsistent methodologies in its valuations. For example, at times, acquired assets with fair market values in excess of zero were improperly assigned a zero basis. At other times, there was a failure to apply GAAP consistently with respect to the treatment of gains and losses on the sale of acquired equipment.

23.     The deficiencies in XPO's historical purchase accounting practices resulted in inaccurate values being ascribed to some of the equipment which the Company acquired in purchase business combinations and in some cases the valuations assigned by the Company were below fair market value. As a result, XPO's books and records and financial statements and reports were inaccurate throughout the Class Period.

24.     The books and records prepared by XPO relating to these acquisitions are not now sufficient to determine to what extent individual assets were undervalued or to permit an accurate revaluing of the equipment acquired through purchase business combinations during that period. As a result of the practices described above, XPO's pre-tax income was significantly overstated throughout the class period.

**Improper Use of Acquisition Reserves**

25.     During the Class Period, XPO engaged in numerous improper accounting practices involving its acquisition reserves. In connection with its recording of the opening balance sheets for entities it acquired, XPO improperly commingled purchase accounting reserves with the company's existing operating reserves. This enabled XPO to utilize excess amounts attributable to these acquisition-related reserves to offset its normal operating costs and increase its net income before tax, a practice that is not in accordance with GAAP.

26.     Instead of eliminating the accounts receivable acquisition reserves after the allocation period (presumed to last no longer than one year), XPO left the acquisition reserves on

its books and commingled acquisition related accounts receivable reserves with operating accounts receivable reserves. This practice enabled the company to offset improperly post-acquisition bad debt expense. The commingling also enabled XPO to reverse improperly excess acquisition accounts receivable reserves into income rather than against goodwill, thereby resulting in an increase to its net income before tax. By not properly accounting for the accounts receivable acquisition reserves, XPO overstated its net income before tax by significant amounts.

27.     XPO also commingled its inventory acquisition reserves with its inventory operating reserves, enabling the Company to use overstated acquisition inventory reserves to offset inappropriately inventory obsolescence and shrinkage charges, thereby improperly increasing the company's net income before tax by significant amounts.

28.     XPO also recognized accruals primarily to account for liabilities that were part of the acquired entities, as well as in certain cases to reserve for non-compete agreements. These accruals were commingled with accruals that were set up in XPO's normal course of business, enabling the Company to offset inappropriately post- acquisition operating expenses, thereby resulting in inflated net income before tax. As a result, based on the total amount of such accruals recognized, XPO overstated its net income before tax by significant amounts.

29.     XPO also established accrued acquisition reserves to offset post acquisition expenses. These accruals included general reserves which were not in accordance with GAAP.

**False and Misleading Statements**

30.     On August 10, 2015, XPO booked a mysterious "Acquisition Earn-Out Liability" of $29 million, without making any disclosure about any earn-out component of the consideration.

31.     On February 24, 2016, the Company filed on form 8-K with the SEC a notice that stated in pertinent part:

XPO Logistics, Inc. (NYSE: XPO) today announced financial results for the fourth quarter and full year of 2015. For the fourth quarter of 2015, total gross revenue increased 302.3% year-over-year to $3.3 billion, and net revenue increased 419.8% to $1.6 billion.

On a GAAP basis, the company reported a net loss of $63.1 million for the quarter, compared with a net loss of $9.9 million for the same period in 2014. The net loss attributable to common shareholders was $62.8 million, or a loss of $0.58 per diluted share, compared with a net loss attributable to common shareholders of $51.5 million, or a loss of $0.77 per diluted share, for the same period in 2014. The fourth quarter 2015 GAAP net loss includes $64.7 million of one-time after-tax transaction-related costs net of noncontrolling interests, and a $42.7 million non-cash after-tax amortization charges.

The adjusted net loss attributable to common shareholders, a non-GAAP measure, was $23.1 million, or a loss of $0.21 per share for the fourth quarter of 2015, excluding the items detailed below. This compares with an adjusted net loss attributable to common shareholders of $6.5 million, or a loss of $0.10 per share, for the fourth quarter of 2014.

The adjusted net loss attributable to common shareholders for the fourth quarter of 2015 excludes: $93.8 million, or $64.7 million after-tax, of one-time transaction-related costs net of noncontrolling interests; $2.0 million, or $1.7 million after-tax, of costs related to the conversion of convertible senior notes; a $12.5 million benefit due to the release of a tax valuation allowance; $12.0 million of unrealized foreign exchange benefit, net of tax; and a $3.5 million benefit, or $2.2 million after-tax, related to the gain on sale of intermodal equipment. Reconciliations of adjusted net loss attributable to common shareholders and adjusted EPS are provided in the attached financial tables.

Adjusted earnings before interest, taxes, depreciation and amortization ("adjusted EBITDA"), a non-GAAP financial measure, improved to $217.6 million for the quarter, compared with $42.0 million for the same period in 2014. Adjusted EBITDA in the fourth quarter of 2015 excludes $82.6 million of one-time transaction-related costs; and a $3.5 million benefit related to the gain on sale of intermodal equipment assets. A reconciliation of adjusted EBITDA to net loss is provided in the attached financial tables.

As of December 31, 2015, the company had approximately $290 million of cash and cash equivalents, and a $1 billion asset-backed revolver. Approximately 72% of the company's debt will mature in 2021 or later.

…

For the full year 2015, the company reported total revenue of $7.6 billion, a 223.5% increase from 2014.

On a GAAP basis, the company reported a net loss of $191.6 million for the full year 2015, compared with a net loss of $63.6 million last year. The net loss

attributable to common shareholders was $245.9 million, or a loss of $2.65 per diluted share, compared with a net loss of $107.4 million, or a loss of $2.00 per diluted share, for 2014. The 2015 GAAP net loss includes: $165.2 million of one-time after-tax transaction-related costs net of noncontrolling interests; a $102.2 million non-cash after-tax amortization charges; and $52.0 million of non-cash accounting charges related to the beneficial conversion features of the $1.26 billion equity private placement in June 2015.

The adjusted net loss attributable to common shareholders, a non-GAAP measure, was $36.9 million, or a loss of $0.40 per share for 2015, excluding the items detailed below. This compares with an adjusted net loss attributable to common shareholders of $33.0 million, or a loss of $0.62 per share, for 2014.

Adjusted net loss attributable to common shareholders for 2015 excludes: $220.7 million, or $165.2 million after tax, of one-time transaction-related costs net of noncontrolling interests; $52 million of non-cash accounting charges related to the beneficial conversion features of the $1.26 billion equity private placement; $10.0 million, or $8.2 million after-tax, of costs related to the conversion of convertible senior notes; $2.4 million, or $1.5 million after-tax of accelerated amortization of trade names; $12.0 million of unrealized foreign exchange benefit, net of tax; and a $9.5 million benefit, or $5.9 million after-tax, related to the gain on sale of intermodal equipment. Reconciliations of adjusted net loss to common shareholders and adjusted EPS are provided in the attached financial tables.

Adjusted EBITDA for 2015 improved to $493.1 million, compared with $81.4 million for 2014. Adjusted EBITDA for 2015 excludes $201.0 million of one-time transaction-related costs; and a $9.5 million benefit related to the gain on sale of intermodal equipment assets. A reconciliation of adjusted EBITDA to net loss is provided in the attached financial tables.

32.     On February 29, 2016, the Company filed on form 10-K with the SEC its annual report, which included financial information including that summarized in paragraph 31, above.

33.     On February 21, 2017, the Company filed on form 8-K with the SEC a notice that stated in pertinent part:

XPO Logistics, Inc. (NYSE: XPO) today announced financial results for the fourth quarter and full year 2016. For the fourth quarter of 2016, revenue increased 10.0% year-over-year to $3.68 billion. Net income attributable to common shareholders was $27.3 million for the quarter, or earnings of $0.22 per

diluted share, compared with a net loss attributable to common shareholders of $62.8 million, or a loss of $0.58 per diluted share, for the same period in 2015.

Adjusted net income attributable to common shareholders, a non-GAAP financial measure, was $29.8 million, or adjusted earnings of $0.24 per diluted share for the fourth quarter of 2016, excluding the items detailed below. This compares with an adjusted net loss attributable to common shareholders of $23.1 million, or an adjusted loss of $0.21 per diluted share, for the same period in 2015. Reconciliations of non-GAAP financial measures used in this release are provided in the attached financial tables.

The adjusted net income attributable to common shareholders for the quarter excludes: $34.9 million, or $21.8 million after-tax, of integration and rebranding costs; $16.5 million, or $10.1 million after-tax, of non-cash debt extinguishment costs related to the sale of the truckload unit; a benefit of $33.0 million, or $20.0 million after-tax, from unrealized gains on foreign exchange; and a $9.6 million benefit to our tax liability due to lower tax rates enacted in France.

Adjusted earnings before interest, taxes, depreciation and amortization ("adjusted EBITDA"), a non-GAAP financial measure, improved to $291.1 million for the quarter, excluding $34.9 million of transaction, integration and rebranding costs. This compares with $217.6 million for the same period in 2015.

For the full year 2016, the company generated $625.4 million of cash flow from operations and $210.9 million of free cash flow, a non-GAAP financial measure.

…

For the full year 2016, the company reported total revenue of $14.62 billion, a 91.8% increase from 2015. Net income attributable to common shareholders was $63.1 million, or $0.53 per diluted share, compared with a net loss of $245.9 million, or a loss of $2.65 per diluted share, for 2015.

The adjusted net income attributable to common shareholders for 2016 was $121.5 million, or adjusted earnings of $1.00 per diluted share, excluding the items detailed below. This reflects a substantial improvement from the adjusted net loss attributable to common shareholders of $36.9 million, or an adjusted loss of $0.40 per diluted share, for 2015.

Adjusted net income for 2016 excludes: $103.2 million, or $65.3 million after-tax, of transaction, integration and rebranding costs; $69.9 million, or $42.9 million after-tax, of debt extinguishment and conversion costs; a benefit of $36.0 million, or $23.1 million after-tax, from unrealized gains on foreign exchange; discrete tax benefits of $15.7 million; and a benefit to depreciation and amortization of $5.8 million, or $3.6 million after-tax, related to the purchase price allocation of acquired assets.

Adjusted EBITDA for full year 2016 improved significantly to $1.25 billion, compared with $493.1 million for 2015. Adjusted EBITDA for 2016 excludes $103.2 million of transaction, integration and rebranding costs.

34.     On February 28, 2017, the Company filed on form 10-K with the SEC its annual report which included financial information including that summarized in paragraph 33, above.

35.     On February 7, 2018, the Company filed on form 8-K with the SEC a notice that stated in pertinent part:

XPO Logistics, Inc. (NYSE: XPO) today announced financial results for the fourth quarter and full year 2017. Revenue was $4.19 billion for the quarter, compared with $3.68 billion for the same period in 2016. Revenue increased year-over-year by $555.2 million, excluding fourth quarter 2016 revenue of $37.9 million from the North American truckload unit divested in October 2016. Net income attributable to common shareholders was $188.5 million for the quarter, or earnings of $1.42 per diluted share, compared with net income attributable to common shareholders of $27.3 million, or earnings of $0.22 per diluted share, for the same period in 2016.

Adjusted net income attributable to common shareholders, a non-GAAP financial measure, was $59.2 million for the quarter, compared with $29.8 million for the same period in 2016. Adjusted earnings per diluted share, a non-GAAP financial measure, was $0.45 for the quarter, compared with $0.24 for the same period in 2016. Adjusted net income attributable to common shareholders and adjusted earnings per diluted share for the fourth quarter 2017 exclude: $169.6 million of a net tax benefit related to tax reform and other discrete tax-related adjustments; $23.2 million, or $15.3 million after-tax, of integration and rebranding costs; $22.4 million, or $14.9 million after-tax, of costs related to debt extinguishment; and $0.7 million, or $0.4 million after-tax, of non-cash unrealized losses on foreign currency contracts. Reconciliations of non-GAAP financial measures used in this release are provided in the attached financial tables.

Adjusted earnings before interest, taxes, depreciation and amortization ("adjusted EBITDA"), a non-GAAP financial measure, improved to $336.7 million for the quarter, excluding $23.2 million of integration and rebranding costs. This compares with $291.1 million of adjusted EBITDA for the same period in 2016, which included the divested North American truckload unit.

For the fourth quarter 2017, the company generated cash flow from operations of $273.9 million and free cash flow of $179.5 million. For full year 2017, the

company generated cash flow from operations of $798.6 million and free cash flow of $373.9 million.

…

For the full year 2017, the company reported total revenue of $15.38 billion, compared with $14.62 billion for the same period in 2016. Revenue increased year-over-year by $1.19 billion, excluding 2016 revenue of $431.9 million from the North American truckload unit divested in October 2016. Net income attributable to common shareholders was $312.4 million, or $2.45 per diluted share, for 2017, compared with $63.1 million, or $0.53 per diluted share, for 2016.

Adjusted net income attributable to common shareholders for 2017 was $248.5 million, compared with $121.5 million for 2016. Adjusted earnings per diluted share was $1.95 for 2017, compared with $1.00 for 2016. Adjusted net income and adjusted earnings per diluted share for 2017 exclude: $175.4 million of tax benefits related to tax reform and other discrete tax-related adjustments; $78.3 million, or $52.0 million after-tax, of integration and rebranding costs; $49.4 million, or $32.8 million after-tax, of non-cash unrealized losses on foreign currency contracts; and $36.5 million, or $24.3 million after-tax, of costs related to debt extinguishment and conversions of convertible senior notes.

Adjusted EBITDA for the full year 2017 improved to $1.37 billion, excluding $78.3 million of integration and rebranding costs. This compares with $1.25 billion of adjusted EBITDA for the same period in 2016, which included the divested North American truckload unit.

36.   On February 12, 2018, the Company filed on form 10-K with the SEC its annual report which included financial information including that summarized in paragraph 35, above.

37.   On May 7, 2018, the Company filed on form 10-Q with the SEC its quarterly results for the first quarter of 2018 which summarized XPO's purported financial results for the quarter.

38.   On August 3, 2018, the Company filed on form 10-Q with the SEC its quarterly results for the second quarter of 2018 which summarized XPO's purported financial results for the quarter.

39.     On November 5, 2018, the Company filed on form 10-Q with the SEC its quarterly results for the third quarter of 2018 which summarized XPO's purported financial results for the quarter.

40.     Defendant Jacobs signed certifications for each of the 10-Qs and each of the 10-Ks described above.

41.     Defendant Hardig signed certifications for each of the 10-Ks described above, as well at the 10-Qs for the second quarter of 2015, and the first and second quarters of 2018.

42.     Defendant Glickman signed a certification for the 10-Q for the third quarter of 2018.

43.     Each of statements identified above were materially false and misleading when issued as (1) the non-GAAP financial results were false and misleading due to the improprieties identified above; (2) the Company's financial statements did not fairly present its results; and (3) the Sarbanes-Oxley certifications were false.

44.     Among other things, the above-mentioned certifications, which were made pursuant to the Sarbanes-Oxley Act of 2002, required the signer to attest that they have reviewed the report, that it does not contain untrue statements, that it fairly represents the financial condition of the company, and that the company's internal controls are effective.

**The Truth is Revealed**

45.     The truth was finally revealed on December 13, 2018. On that date, Spruce Point Capital Management released a sixty-nine page report titled "Trucking Ridiculous; End Of The Road". This report alleges that XPO is plagued by "financial irregularities that conveniently cover its growing financial strain and inability to complete additional acquisitions despite repeated promises." The report characterizes XPO's financials as "unreliable and dubious" stating that

Spruce Point has uncovered "concrete evidence to suggest dubious tax accounting, under-reporting of bad debts, phantom income through unaccountable M&A earn-out liabilities, and aggressive amortization assumptions: all designed to portray glowing 'Non-GAAP' results."

46.     XPO's stock price cratered in the aftermath of these disclosures. After closing at $60.27 on December 12, 2018, the Company's stock price dropped to $44.50 per share on December 13, 2018 – a 26 % drop.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired XPO common stock between August 10, 2015 and December 13, 2018, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

48.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

49.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

     a.   Whether the Exchange Act was violated by Defendants;

     b.   Whether Defendants omitted and/or misrepresented material facts;

     c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e.   Whether the price of the Company's stock was artificially inflated; and

    f.   The extent of damage sustained by Class members and the appropriate measure of damages.

50.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

51.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

52.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

53.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.   The omissions and misrepresentations were material;

    c.   The Company's common stock traded in efficient markets;

    d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e.   Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and

the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

54.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

55.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

56.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

57.     On December 13, 2018, XPO's common stock price fell 26% per share, falling from its closing price of $60.27 per share to $44.50 per share, after the publication of the Spruce Point Capital Management Report.

16

## CAUSES OF ACTION

### <u>Count I</u>
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

61.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### <u>Count II</u>
### Violation of § 20(a) of the Exchange Act
### (Against The Individual Defendants)

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)     awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c)     awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)     awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: December 14, 2018

Respectfully submitted,

**GARDY & NOTIS, LLP**

By: s/ Jennifer Sarnelli
James S. Notis, jnotis@gardylaw.com
Jennifer Sarnelli, jsarnelli@gardylaw.com
126 East 56th Street, 8th Floor
New York, NY 10022
(212) 905-0509 phone
(212) 905-0508 fax

*Attorneys for Plaintiff*

Additional Counsel:

**BLOCK & LEVITON LLP**
Jeffrey C. Block, jeff@blockesq.com
Jacob A. Walker, jake@blockesq.com (*pro hac vice* motion to be filed)
Nathaniel Silver, nate@blockesq.com (*pro hac vice* motion to be filed)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax